*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* SJ, Minor.

UNPUBLISHED
August 18, 2022

No. 360396
Kalamazoo Circuit Court
Family Division
LC No. 2020-000038-NA

Before: GADOLA, P.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM.

Respondent, the mother of the minor child, SJ, appeals by right the trial court's order terminating her parental rights to SJ.[1] Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Respondent is the mother to three children in addition to SJ. Respondent's rights to these other children have been terminated by the court or voluntarily relinquished by her. In January 2019, respondent had an open case with Child Protective Services (CPS) in Indiana regarding SJ as a result of respondent's inability to provide a home for him. In July 2019, respondent took SJ to Kalamazoo, Michigan to avoid investigation by Indiana CPS into respondent's homelessness and substance abuse (particularly methamphetamine). Once in Michigan, respondent refused to cooperate with caseworkers or comply with family reunification services through Kalamazoo County CPS and Families First of Michigan. Despite being provided with housing assistance, by December 2019, respondent and SJ were once again homeless.

On January 31, 2020, the trial court ordered SJ to be removed from respondent's care and into foster care because she was unable to provide him with proper shelter, was using methamphetamine while caring for him, and refused to participate in offered services. After learning of the court's removal order, respondent fled with SJ back to Indiana. On February 5, 2020, petitioner, Department of Health and Human Services (the Department), filed a petition to terminate respondent's parental rights to SJ under to MCL 712A19b(3)(g) (failure to provide

---

[1] The court also terminated the parental rights to the child's father, who is not a party to this appeal.

proper care or custody), (j) (reasonable likelihood of harm if returned to parent) and (*l*) (parent failed to rectify issues that led to a voluntary termination of parental rights to another child in a similar proceeding).

The trial court assumed jurisdiction over SJ after respondent admitted to the allegation that on January 31, 2020, she was unable to provide proper care and custody for the child, placing him at a substantial risk of harm. Over the objection of the caseworkers, petitioner amended the petition goal from termination to reunification.

The trial court conducted five dispositional review hearings. At each, the court considered petitioner's updated treatment plans, reports, and caseworker testimony, and concluded that petitioner had made reasonable reunification efforts. Respondent did not object to these findings. The trial court also concluded that respondent had made minimal, if any, progress on her substance abuse and mental health treatment plans. On April 5, 2021, the trial court determined that respondent failed to comply with, and show benefit from, recommended services. The barriers to family reunification, including substance abuse, housing, income, emotional stability and parenting skill, had not been rectified, and petitioner was ordered to initiate termination proceedings while continuing services.

On September 16, 2021, petitioner filed a supplemental petition to terminate respondent's parental rights. Petitioner alleged that respondent had no contact with SJ since January 13, 2021, her whereabouts were unknown, and she had failed to comply with, and benefit from, her case-service plan.

Termination proceedings began on September 21, 2021. The trial court found that respondent had mental health, employment, and housing issues, and that petitioner had made reasonable reunification efforts. There was clear and convincing evidence to support termination under MCL 712A.19(B)(3)(c)(*i*) (conditions that led to adjudication continued to exist) because respondent had not availed herself of offered services and had not rectified her issues with substance abuse and unstable housing. Additionally, the court determined that there was clear and convincing evidence to support termination under MCL 712A.19(B)(3)(c)(*ii*) (other conditions warranting the court's involvement continued to exist) because respondent had not rectified other conditions, such as her mental health issues, that caused the child to come within the court's jurisdiction. The trial court further found clear and convincing evidence to terminate respondent's parental rights under MCL 712A.19b(3)(j) and (*l*), because of her unstable lifestyle, finding that she was "hanging on by a thread," and the child would be not be safe in her care.

Lastly, the trial court determined, by a preponderance of the evidence, that terminating respondent's parental rights was in the child's best interests because SJ needed stability and permanency. This appeal followed.

## II. STANDARDS OF REVIEW

This Court reviews for clear error a trial court's decision regarding whether reasonable reunification efforts were made. *In re Fried*, 266 Mich App 535, 542-543; 702 NW2d 192 (2005). However, unpreserved issues are reviewed for plain error affecting substantial rights. *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). "To avoid forfeiture under the plain error rule, three

requirements must be met: 1) error must have occurred, 2) the error was plain, *i.e.*, clear or obvious, 3) and the plain error affected substantial rights." *In re VanDalen*, 293 Mich App 120, 135; 809 NW2d 412 (2011) (quotation marks and citations omitted). "Generally, an error affects substantial rights if it caused prejudice, *i.e.*, it affected the outcome of the proceedings." *In re Utrera*, 281 Mich App at 9. The asserting party bears the burden of persuasion with respect to prejudice. *In re Pederson*, 331 Mich App 445, 463; 951 NW2d 704 (2020).

## III. DISCUSSION

Respondent claims that petitioner's reunification efforts were inadequate because they did not accommodate her disabilities associated with her mental health, as required by the Americans with Disabilities Act of 1990 (ADA), 42 USC 12101 *et seq*. Respondent claims that termination of her parental rights could have been prevented if she had been offered adequate services and treatment. According to respondent, petitioner and the trial court did not sufficiently acknowledge her diagnoses of bipolar disorder, schizophrenia, and posttraumatic stress disorder (PTSD), which she claims were known for more than a year but not addressed until the termination hearing. These claims are without merit.

In child protective proceedings, any claim that a respondent is entitled to special accommodations under the ADA must be asserted in a timely manner in order to allow petitioner and the court to respond appropriately. *In re Terry*, 240 Mich App 14, 26; 610 NW 2d 563 (2000). To preserve a claim under the ADA, a respondent must thus raise the issue sufficiently in advance of the termination proceedings, typically when the service plan is adopted or shortly thereafter. *In re Hicks/Brown*, 500 Mich 79, 87-88; 893 NW2d 639 (2017); *In re Terry*, 240 Mich App at 26. In this case, respondent did not assert any rights under the ADA in the trial court; therefore, this issue is unpreserved.[2] Petitioner, however, does not challenge respondent's assertion that she qualifies as a disabled parent under the ADA, nor does it dispute that is it obligated to comply with the ADA in termination proceedings.

We conclude the trial court did not plainly err in finding, before terminating respondent's parental rights, that petitioner had made reasonable family reunification efforts, which included services that reasonably accommodated respondent's mental health disability. Generally, "the Department has an affirmative duty, absent aggravated circumstances, to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Hicks/Brown*, 500 Mich at 85, citing MCL 712A.18f(3)(b) and (c), and MCL 712A.19a(2). Petitioner is required to make reasonable efforts to rectify the conditions that caused the child's removal by adopting a service

---

[2] Citing *In re Terry*, 240 Mich App at 26 n 5, petitioner argues that because respondent did not timely assert her rights under the ADA in the trial court, her sole remedy is to bring a separate action for discrimination. However, this Court recently has, in the context of termination proceedings, undertaken direct appellate of a parent's unpreserved claims under the ADA, thus suggesting, without necessarily deciding, that a separate ADA action is unnecessary. See *In re S J Sanborn*, 337 Mich App 252, 263; 976 NW2d 44 (2021). Accordingly, we will review respondent's argument under the plain error standard.

plan that outlines the steps that it and the parent are expected to undertake to rectify the issues that led to court involvement, and reasonable efforts to achieve reunification. MCL 712A.18f(1), (2), (4) and (5); see also *In re Moss*, 301 Mich App 76, 90-91; 836 NW2d 182 (2013) (the Department has a duty "to reunite the parent and children unless certain aggravating circumstances exist.").

As part of the affirmative duty to make reasonable reunification efforts, petitioner has "obligations under the ADA that dovetail with its obligations under the Probate Code." *In re Hicks/Brown*, 500 Mich at 85-86. Petitioner "must make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless . . . the modifications would fundamentally alter . . . the service provided." *In re S J Sanborn*, 337 Mich App 252, 263; 976 NW2d 44 (2021) (quotation marks and citations omitted). Reunification efforts cannot be reasonable under the Probate Code, MCL 710.21 *et seq.*, unless petitioner modifies its services as reasonably necessary to accommodate a parent's disability under the ADA. *Id.* at 264. The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities." 42 USC 12102(1)(A). The ADA's protections are extended to cover "any department, agency, special purpose district, or other instrumentality of a State or States or local government," which include petitioner and the trial court. 42 USC 12131(1)(B).

In addition to petitioner's duty to offer services to a respondent-parent, the parent has a commensurate responsibility to participate in the offered services. *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012). When making an unpreserved challenge that the offered services did not comport with the ADA, a respondent has the burden to establish that he or she would have fared better if other services had been offered. *In re S J Sanborn*, 337 Mich App at 264. If a parent is simply unable to meet the needs of her child, then "the needs of the child must prevail over the needs of the parent." *In re Terry*, 240 Mich App at 28.

In this case, the record demonstrates that respondent was repeatedly offered mental health services as part of her parent-agency treatment plan. On January 31, 2020, the trial court issued an order to remove the child from respondent's custody and care because of substance abuse and homelessness. After learning of the removal order, respondent fled with the child. The child was retrieved on March 26, 2020, but respondent's whereabouts were unknown until April 2020. Respondent's mental health and parenting skills were identified as additional reunification barriers after caseworkers met with her at that time.

Although adjudication and disposition did not occur until August and September of 2020, respectively, respondent voluntarily complied with a parent-agency treatment plan. Respondent participated in a psychological evaluation and a substance abuse assessment in July and August of 2020. Respondent's mental health needs were clearly identified in an August 20, 2020 psychological evaluation report that noted her previous diagnoses of bipolar disorder and schizophrenia, and that she "denied symptoms related to hallucinations and mania." The evaluator recommended, *inter alia*, that respondent: (1) participate in services at Interact of Kalamazoo or a similar agency that provides clinical intervention for dual diagnoses; (2) work with an individual counselor experienced with anxiety disorders in general, and PTSD in particular; and (3) avoid all mood-altering drugs and continue substance-abuse treatment and Narcotics Anonymous (NA). The evaluator opined that if respondent did not address her mental health issues, her prognosis for parenting in a safe and consistent manner was "guarded."

After adjudication and initial disposition, respondent was ordered to comply with, and benefit from, a case treatment plan, which included following all of the psychological evaluation and substance abuse assessment recommendations, submitting to random drug screens, attending parenting classes, finding suitable housing and employment, and attending parenting time. Between August 2020 and October 2021, the caseworkers submitted reports and testimony regarding respondent's progress with her treatment plan at six review hearings, as well as the termination hearing. Initially, respondent told the caseworker that she was in counseling. In addition, for two to three months, respondent cooperated with petitioner, participated in services, and generally made progress.

Respondent mischaracterizes the record when she asserts that trauma-based therapy was mentioned for the first time at the termination hearing. At the January 2020 hearing, the caseworker testified that respondent understood that seeking therapy, including addressing past trauma, was part of her court-ordered case-service plan. At the September 2020 hearing, respondent's psychological evaluation was admitted into evidence and reviewed by the court. The caseworker specifically testified that the psychological evaluator recommended continued counseling to address any trauma and underlying mental health issues. In November 2020, the caseworker reported on respondent's mental health needs. At the initial dispositional hearing, respondent reported that she was not then in counseling but had found an NA sponsor. As recommended by the psychological evaluator, respondent was referred to Woodlands Behavioral Health, Integrated Services of Kalamazoo, and Southwest Michigan Behavioral Health, but she did not follow through with these services. Indeed, respondent admitted that she had attended an appointment with "community mental health" but never scheduled a second appointment.

In January 2021, respondent reported that she was in therapy, but she never provided any verification despite numerous requests. Respondent was ordered to provide the name of her therapist within 14 days. As of the April 2021 review hearing, however, respondent had not provided any documentation regarding her therapist. At the termination hearing, one caseworker testified that, despite ongoing encouragement and offers of therapy resources, respondent never participated in any counseling to achieve emotional stability. Another caseworker also testified that respondent had not participated in counseling. In light of this evidence, respondent's claim that petitioner and the trial court gave only casual consideration to her need for mental health services is simply false.

We additionally conclude that nothing in the record supports respondent's contention that additional mental health services would have affected the outcome of her case. In arguing to the contrary, respondent relies on *In re Hicks/Brown*. But this case is clearly distinguishable from *Hicks/Brown*, in that the respondent-mother's attorney in that case had requested, on at least five occasions, that she receive services to accommodate her intellectual disability. *In re Hicks/Brown*, 500 Mich at 84. Counsel argued at a hearing held over a year after the adoption of the initial service plan, but roughly 11 months before the termination hearing, that the services petitioner had offered had not sufficiently accommodated her client's intellectual disability, and specific supportive services were requested. *Id*. at 88-89. The Michigan Supreme Court concluded that the trial court had not considered that petitioner had failed to provide the specific services the trial court had ordered to accommodate the respondent-mother's intellectual disability. *Id*. at 90. Here, respondent did not challenge the trial court's findings at periodic review hearings that petitioner had made reasonable reunification efforts, nor did she assert any rights under the ADA until this

appeal. In addition, there is nothing in the record to support respondent's claim that petitioner failed to adhere to the trial court's orders to provide services as recommended by the psychological evaluator.

Moreover, the record does not support the claim that respondent would have fared better if she had been provided with more, or different, mental health services earlier in the proceedings, including if the trial court had used its coercive powers to coerce respondent to submit to trauma-informed therapy. Respondent does not identify any specific therapy she might have attended, with or without the court's prodding, that would have ultimately resulted in her achieving a methamphetamine-free lifestyle, especially in light of her long history of generally refusing reunification services. In 2016, her parental rights to two other children were terminated because she refused services for substance abuse and homelessness. Respondent voluntarily relinquished her parental rights to a third child in early 2019 under similar circumstances. In this case, from January 2020 to October 2021, respondent steadfastly refused to engage in any services that were repeatedly offered, except for a brief period in the summer of 2020. Respondent told the caseworker that she adamantly opposed therapy because she believed it was not helpful to "bring up old things," and "that it was more triggering for her." She continued to abuse methamphetamine while on the cusp of losing her parental rights to a fourth child. In a stunning display of self-denial, when asked at the termination hearing whether she needed counseling, respondent replied: "I don't, but you guys do." Further, a trial court does not have the power in a child protective proceeding to force a parent to comply with a treatment plan by resorting to contempt sanctions. Here, the trial court repeatedly ordered respondent to participate in services, which was the full measure of its permissible persuasive power. Clearly, respondent was not amenable to any treatment, despite understanding that defying the court's orders would likely lead to termination of her parental rights.

Here, as in *In re S J Sanborn,* respondent has not identified any service that she believes would have benefited her more than the services that were actually offered. Instead, respondent merely lists the results and recommendations of her psychological evaluation. Respondent thus leaves us to speculate, as in *In re S J Sanborn*, regarding not only what other services petitioner *could* have offered, but also the avenues through which respondent *might have been* persuaded to engage in any such services. Respondent's blanket insistence that the services offered were insufficient in light of her disability does not establish plain error affecting substantial rights. See *In re Utrera*, 281 Mich App at 9.

Affirmed.

/s/ Michael F. Gadola
/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly